IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Chief Judge Marcia S. Krieger

Civil Action No. 17-CV-2168-MSK

DANELL A. VALDEZ,

    Plaintiff,

*v*.

COMMISSIONER, SOCIAL SECURITY ADMINISTRATION,

    Defendant.

---

**OPINION AND ORDER REVERSING THE COMMISSIONER'S DECISION**

---

**THIS MATTER** comes before the Court on the Plaintiff's Complaint (**# 1**), the Plaintiff's Opening Brief (**# 14**), the Defendant's Response (**# 15**), and the Plaintiff's Reply (**# 16**). For the following reasons, the Commissioner's decision is reversed and the matter is remanded for further proceedings.

## I.    JURISDICTION

The Court has jurisdiction over an appeal from a final decision of the Commissioner under 42 U.S.C. § 405(g).

## II.    BACKGROUND

**A.    Procedural History**

Danell Valdez seeks judicial review of a final decision by the Commissioner denying her claim for disability insurance benefits (DIB) and supplemental security income (SSI) under the Social Security Act. In August 2013, Ms. Valdez filed for DIB and SSI, claiming she became disabled in January 2011, later amended to September 2013. Tr. at 40, 171–79. Her application

was denied at all administrative levels and she now appeals to this Court.

**B.   Factual Background**

The Court summarizes only the medical evidence relevant to its decision.   Here, the dispositive issue concerns the weight given to the medical opinions as to her functional capacity.   At the time of her alleged onset of disability, Ms. Valdez was 46 years old.   Tr. at 66.   She was previously employed as a waitress, cook, bartender, and office manager.   Tr. at 240.   She has a history and findings of cervical and lumbar spine musculoskeletal disorders, with chronic pain and limited motion, vertigo, and headaches.

At the direction of the Commissioner, in January 2014, Dr. Jaime Easchief evaluated Ms. Valdez.   Tr. at 360–74.   Dr. Easchief observed that Ms. Valdez did not appear to have any difficulty maneuvering in the examination room.   Tr. at 363.   Dr. Easchief noted normal ranges of cervical range of motion, but moderate discomfort with more limited dorsolumbar range of motion.   Tr. at 364.   Dr. Easchief also observed mild discomfort while Ms. Valdez was supine and performing straight leg raises.   Tr. at 364.   Ms. Valdez had normal range of motion without discomfort in her knee, ankle, shoulder, elbow, wrist, and finger joints.   Tr. at 364–65.   Though Dr. Easchief did not find any tenderness on the cervical, thoracic, or sacral spine, she did note pain on palpitation at L2 to L4.   Tr. at 365.   Based on her examination, Dr. Easchief diagnosed Ms. Valdez with lumbalgia with likely spondylolithesis.   Tr. at 365.   She then opined Ms. Valdez could sit between four and six hours; stand and walk occasionally; and bend, stoop, squat, crouch, and crawl occasionally; all in an eight-hour workday.   Tr. at 365.   Dr. Easchief did not recommend any limitations for weight bearing or fingering, or for environmental concerns.   Tr. at 365.

In February 2014, Dr. Morris Susman, a state-agency non-examining physician, reviewed

the compiled medical records and completed a residual functional capacity (RFC) assessment. Tr. at 73–76. He found Ms. Valdez could occasionally lift or carry 20 pounds and frequently lift or carry 10 pounds; stand, walk, or sit six hours with periodic alternation to relieve discomfort; and climb ramps/stairs occasionally, never climb ladders, balance frequently, stoop occasionally, kneel occasionally, crouch occasionally, and crawl occasionally. Tr. at 73–74.

In January 2016, Dr. Velma Campbell, a consulting examiner, examined Ms. Valdez. Tr. at 528–39. Dr. Campbell also conducted a review of Ms. Valdez's medical records. Tr. at 529–33. Dr. Campbell observed no muscle spasms in Ms. Valdez's neck, but noted tenderness in her paravertebral muscles and at C7 to T1. Tr. at 533. Dr. Campbell found no tenderness or pain in the upper extremities, lower extremities, and thoracic spine, though she did observe tenderness between L3 and L5. Tr. at 533. Dr. Campbell also observed pain on straight leg raises. Tr. at 533. Based on this examination, Dr. Campbell diagnosed Ms. Valdez with, among other things, cervical spine degenerative disc disease, spondylosis, and moderate-to-servere foraminal stenosis with muscle tension and limited motion; vertigo without any indication of Meniere's disease; occipital neuralgia with headaches, consistent with occipital origin; and lumbar spine degenerative disc disease with right sciatica, subjective left weakness. Tr. at 534. Based on these diagnoses, Dr. Campbell opined that, among other things, that Ms. Valdez could lift and carry 20 pounds less than 30 minutes a day and 10 pounds for three hours a day; walk and stand three hours a day; sit six-to-eight hours a day; bend, stoop, squat, and kneel two hours a day; and reach or work above shoulder height less than two hours a day with no more than five pounds, all based on an eight-hour workday. Tr. at 534–38.

In February 2016, Dr. Gary Cohen completed a headaches questionnaire. Tr. at 526–27. He stated that it was unclear what type of headaches Ms. Valdez has or how long they last, but also

3

that they occur "continuously, now less often". Tr. at 526. He observed that, despite treatment with medication, the headaches still occur. Tr. at 526. He stated that Ms. Valdez typically experiences more than moderate pain, exhaustion, and photosensitivity during headaches, and that there are no particular triggers for the headaches. Tr. at 526–27. He opined that bright lights and noise make the headaches worse, and that lying down in quiet makes them better. Tr. at 527. He noted that other causes of the headaches have been ruled out and concluded that Ms. Valdez would not be able to function on the job during a headache spell. Tr. at 527.

**C. The ALJ's Decision**

In April 2016, the ALJ issued a decision unfavorable to Ms. Valdez. At step one, the ALJ found that she had not engaged in substantial gainful activity since September 2013. Tr. at 20. At step two, the ALJ found that Ms. Valdez had the following severe impairments: lumbar degenerative disc disease, cervical degenerative disc disease, and right carpal tunnel syndrome. Tr. at 20. At step three, the ALJ found that Ms. Valdez did not have an impairment that met or medically equaled the presumptively disabling conditions listed in 20 C.F.R. Part 404, Appendix 1. Tr. at 23. The ALJ further found that Ms. Valdez had the residual functional capacity (RFC) to perform light work with the following limitations: she cannot bend, squat, kneel, or perform overhead work more than occasionally; she cannot work on ladders or scaffolds; and she cannot handle or finger objects more than frequently. Tr. at 24. At step four, the ALJ found that Ms. Valdez was unable to perform any of her past relevant work. Tr. at 28. At step five, the ALJ concluded that, considering Ms. Valdez's age, education, work experience, and RFC, she could perform the following jobs in the national economy: counter clerk, laminating tender, and furniture rental clerk. Tr. at 28–29.

In crafting Ms. Valdez's RFC, the ALJ gave great weight to Dr. Susman's opinion,

4

substantial weight to Dr. Easchief's opinion, little weight to Dr. Campbell's opinion, and little weight to Dr. Cohen's opinion. Tr. at 26–27.

### III. STANDARD OF REVIEW

Although the Court's review is de novo, the Court must uphold the Commissioner's decision if it is free from legal error and the Commissioner's factual findings are supported by substantial evidence. *See Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005). Substantial evidence is evidence a reasonable person would accept to support a conclusion, requiring "more than a scintilla, but less than a preponderance." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). The Court may not reweigh the evidence, it looks to the entire record to determine if substantial evidence exists to support the Commissioner's decision. *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009).

### IV. DISCUSSION

Ms. Valdez raises several challenges to the Commissioner's ruling. She contends that: (1) the ALJ erred in evaluating the opinion of Dr. Campbell; (2) the ALJ erred in evaluating the opinion of Dr. Cohen; (3) the ALJ erred in evaluating the opinion of Dr. Easchief; (4) the ALJ erred in evaluating the opinion of Dr. Susman; and (5) the ALJ failed to properly assess whether jobs exist in significant numbers in the national economy. Finding legal error in the evaluation of medical opinions, the Court reverses and remands the Commissioner's denial of benefits without reaching the step-five issue.

A treating physician's opinion must be given controlling weight if it is well supported by medically acceptable clinical and laboratory diagnostic techniques and is consistent with the other substantial evidence in the record. *Pisciotta v. Astrue*, 500 F.3d 1074, 1077 (10th Cir. 2007). But if there is no opinion from a treating physician in the record, the ALJ's evaluation of the

consulting examiners' opinions collapses to the factors generally considered for assessment of weight:

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Allman v. Colvin*, 813 F.3d 1326, 1331–32 (10th Cir. 2016). An examining physician's opinion is presumptively entitled to more weight than an opinion derived from a review of the records. *Chapo v. Astrue*, 682 F.3d 1285, 1291 (10th Cir. 2012). The ALJ may dismiss or discount an examining physician's opinion but she must do so based on the foregoing factors and must provide specific, legitimate reasons for rejecting it. *Id*.

### A. Dr. Campbell

As discussed above, Dr. Campbell, a consulting examiner, submitted an opinion based upon a physical examination and review of the record. She opined that, among other things, Ms. Valdez can lift and carry 20 pounds less than 30 minutes a day and 10 pounds for three hours a day; walk and stand three hours a day; sit six-to-eight hours a day; bend, stoop, squat, and kneel two hours a day; and reach or work above shoulder height less than two hours a day with no more than five pounds, all based on an eight-hour workday. Tr. at 534–38.

> The ALJ gave Dr. Campbell's opinion little weight stating:
>
> The undersigned has also considered, but given little weight to, most of the opinions of Dr. Campbell, the above-mentioned consulting physician who conducted a records review and examined the claimant on a sole occasion on January 28, 2016[,] at the request of the claimant's attorney. While some of Dr. Campbell's opinions are in alignment with the assigned residual functional capacity such as her opinion that manipulation of small objects and fine coordination of the hands, the undersigned rejects her opinions that are not in

alignment such as her opinions regarding the claimant's ability to lift, reach, sit, stand, walk and engage in various postural activities, and her speculative opinion regarding the number of days the claimant would not be able to work because of her symptoms, and with her opinion regarding the claimant's hearing abilities. In offering these latter opinions, the undersigned concludes that Dr. Campbell relied too heavily on the claimant's subjective reporting of her symptoms and her alleged limitations, statements that the undersigned does not find are entirely consistent with the medical evidence and other evidence in the record including the evidence referenced in this decision. Besides not being supported by the record as a whole, the undersigned also notes here that Dr. Campbell's opinions are in conflict with the expert opinions of Dr. Susman, the above-mentioned State agency physician who reviewed the record. The undersigned also notes that Dr. Campbell did not have all of the information that the undersigned has about the claimant.

Tr. at 26–27 (citations omitted). Ms. Valdez takes issue with each of the ALJ's bases for assigning Dr. Campbell's opinion little weight.

There are a number of problems with the ALJ's rationale for rejecting Dr. Campbell's opinion. First, to the extent the ALJ enumerated the fact that this opinion was sought or obtained by Ms. Valdez, it is improper to reject a consulting examiner's opinion on this basis. *Quintero v. Colvin*, 567 F. App'x 616, 620 (10th Cir. 2014). Second, and more importantly, the record does not support the ALJ's finding that Dr. Campbell based her opinion only on Ms. Valdez' subjective reports. To the contrary, Dr. Campbell followed what appears to be the usual template for a consultative exam, first recounting the claimant's subjective reports and then conducting a physical examination and a review of records after which she made objective findings. Third, any inconsistency with the opinion of Dr. Susman — the state-agency physician who did not examine Ms. Valdez — is not a proper reason for discounting an examining physician's opinion, which is presumptively given more weight than opinions based on record review. *See Chapo*, 682 F.3d at 1291. This is particularly true because Dr. Susman's opinion was rendered two years before Dr. Campbell, and as a result, Dr. Campbell had a greater longitudinal perspective in addition to conducting a physical examination.

7

Thus, the Court is left with the ALJ's his statements that Dr. Campbell's opinion is inconsistent with the record as a whole and that Dr. Campbell did not have all the information that the ALJ had. These statements reflect consideration of one of the regulatory factors — consistency between the opinion and the record as a whole — but they are conclusory. The decision identifies no particular reference to the record that that is inconsistent with Dr. Campbell's opinion at the time it was rendered, nor does it point to portions of the record reflecting a change in Ms. Valdez's condition after Dr. Campbell's opinion. *See Chapo*, 682 F.3d at 1291.

For these reasons, the Court finds that the ALJ failed to state legitimate justifications for the weight given to Dr. Campbell's opinion. This error is not harmless because Dr. Campbell's has opined that Ms. Valdez is cannot lift 20 pounds more than 30 minutes a day and 10 pounds more than three hours a day which is facially inconsistent with the RFC. Though the RFC limits Ms. Valdez to light work, it does not incorporate these limitations.

**B.  Dr. Cohen**

Dr. Cohen, also a consulting examiner, opined that bright lights and noise make Ms.Valdez's headaches worse, and that lying down in quiet makes them better. Tr. at 527. He stated that other causes of the headaches have been ruled out and concluded that Ms. Valdez would not be able to function on the job during a headache spell. Tr. at 527.

With regard to Dr. Cohen, the ALJ stated:

> The undersigned has also considered the opinions of Dr. Cohen, the above-mentioned neurologist who examined the claimant for the first time on November 4, 2014, and who examined the claimant a second time one year later on November 20, 2015. While the undersigned accepts Dr. Cohen's statement that "it was unclear" what type of headaches the claimant had, the undersigned gives no weight to Dr. Cohen's statement that the claimant "continuously" had had headaches over an unidentified period, and his speculative statement that the claimant would not be able to perform work activities when she was having a headache. In making these statements, the undersigned concludes that Dr. Cohen

8

> relied too heavily on the claimant's subjective reporting of the frequency and severity of her headaches, statements that the undersigned does not find are entirely consistent with the medical evidence and other evidence in the record including the evidence referenced in this decision. Besides being in conflict with Dr. Susman's opinion that the claimant was able to work full-time within certain parameters at the light exertional range, the undersigned also notes that Dr. Cohen did not have all of the information that the undersigned has about the claimant.

Tr. at 27 (citations omitted). Ms. Valdez takes issue with each of the ALJ's bases for assigning Dr. Cohen's opinion little weight. The Commissioner details many ways that Dr. Cohen's opinion is inconsistent with the medical evidence of record — none of which the ALJ discussed — which the Court rejects as a *post hoc* rationalization.

The assessment of Dr. Cohen's opinion suffers from many of the deficiencies as the assessment of Dr. Campbell's opinion. Again, the record does not support the ALJ's finding that Dr. Cohen based his opinion only on Ms. Valdez's subjective report. Dr. Cohen completed a headache questionnaire, and although it is brief, it is supported by Dr. Cohen's treatment notes. The Decision makes no reference to the notes nor questionnaire that suggest undue reliance on Ms. Valdez' subjective complaints. And again, Dr. Susman's opinion is not particularly relevant because it was based solely on record review that substantially predates Dr. Cohen's assessment. This leaves the ALJ's statements that Dr. Cohen's opinion is inconsistent with the record as a whole and that Dr. Cohen did not have all the information that the ALJ had. Again, the Decision contains no reference to any part of the record that contradicts Dr. Cohen's opinion at the time it was rendered, and there is no reference to the record that would reflect a change in Ms. Valdez's after Dr. Cohen's opinion. *See Chapo*, 682 F.3d at 1291. Stating that Dr. Cohen lacked the information the ALJ had is unhelpful without identifying the information — the ALJ lacks the medical degree that Dr. Cohen has, so vaguely mentioning information Dr. Cohen lacked gives rise to concerns that the ALJ is playing doctor. These statements do not constitute specific,

legitimate reasons for rejecting the opinion. *See id*.

This error is not harmless because Dr. Cohen's opinion that Ms. Valdez's headaches are triggered by bright lights and noise is inconsistent with the RFC. Though the RFC limits Ms. Valdez to light work, it does not account for any nonexertional limitations.

**C.    Dr. Easchief**

Dr. Easchief, also a consulting examiner, opined that Ms. Valdez can sit between four and six hours; stand and walk occasionally; and bend, stoop, squat, crouch, and crawl occasionally; all in an eight-hour workday. Tr. at 365.

With regard to Dr. Easchief, the ALJ stated:

> The undersigned has also considered, and given substantial weight to, the opinions of Jaime C. Easchief, M.D., a consulting physician who examined the claimant on January 25, 2014[,] on a sole occasion at the request of the Commissioner. However, the undersigned is not persuaded that the longitudinal record, including the evidence referenced in this decision, supports a finding/argument that Dr. Easchief's opinions about the claimant's ability to sit, stand and walk support a finding that the claimant has not been able to perform the sitting, standing, and/or walking required of light work.

Tr. at 26 (citations omitted). Ms. Valdez argues that the ALJ erred by not limiting her to standing or walking *occasionally* as opined by Dr. Easchief. The Commissioner urges the Court to exercise common sense rather than hold the ALJ to technical perfection.

An ALJ cannot, without explanation, include some RFC limitations assessed by a physician and reject others. *See Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007); *Winfrey v. Chater*, 92 F.3d 1017, 1024 (10th Cir. 1996). Here, the ALJ stated that Dr. Easchief's *opinions* were accorded substantial weight; then the ALJ disagreed with Dr. Easchief's opinion with regard to the claimant's ability to sit, stand and walk. Although the ALJ refers to the "longitudinal record", such reference is conclusory. The Decision points to no evidence in the record that

10

conflicts with Dr. Easchief's assessment. Thus, the ALJ failed to articulate specific, legitimate reasons for rejecting this portion of Dr. Easchief's opinion.

**D.     Dr. Susman**

Dr. Susman, a state-agency reviewing physician, found moderate limitations in some of Ms. Valdez's physical capabilities. The ALJ found:

> [T]he assigned [RFC] is supported by the expert opinions of Dr. Susman, the above-mentioned State agency physician who reviewed this record on February 13, 2014. While additional evidence has been added to this record since Dr. Susman reviewed this record, the undersigned does not find that any of this additional evidence shows that the claimant has had a more or less restrictive [RFC] over any continuous 12-month period since the amended September 1, 2013[,] alleged onset date.

Tr. at 26 (citations omitted). The ALJ also referred to Dr. Susman as an expert in disability programs. Tr. at 22.

Ms. Valdez argues that the ALJ erred by not discussing Dr. Susman's opinion in context with the regulatory factors. The Commissioner contends that the ALJ need not discuss every factor. *See Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007). While the Commissioner is correct, the ALJ's discussion fails to meaningfully address any factor. The only factor the decision arguably addresses is consistency with the evidence of record, but there is little support for consistency because Dr. Susman's opinion is inconsistent with two medical opinions from examining physicians, which opinions are presumptively entitled to greater weight.

11

## V. CONCLUSION

For the foregoing reasons, the Commissioner's decision is **REVERSED AND REMANDED** for proceedings consistent with this opinion. Judgment shall enter in favor of Ms. Valdez.

Dated this 19th day of July, 2018.

**BY THE COURT:**

*Marcia S. Krieger*

Marcia S. Krieger
Chief United States District Judge